William F. GOLTZ and Raymond F.
Goltz, Plaintiffs,

v.

AIR–MAZE CORPORATION, Defendant.

Civ. No. 12747.

United States District Court
E. D. Michigan, S. D.

Dec. 10, 1957.

Leonard Simons and Meyer Weisenfeld, Detroit, Mich., for plaintiff.

Barbier, MacFarlane & Tolleson, Detroit, Mich., and Baker, Hostetler & Patterson, Cleveland, Ohio, for defendant.

O'SULLIVAN, District Judge.

This is an action by the plaintiffs to recover damages from the defendant by reason of claimed breach of contract by the defendant. The contract claimed to have been breached is a so-called "Authorized Distributors' Sales Agreement" made April 27, 1946, between the defendant corporation, a manufacturer of air filter equipment, and plaintiffs herein, whereby plaintiffs were appointed distributors for the defendant corporation within a portion of Michigan, defined in the contract. By the contract, the plaintiffs were given an exclusive, non-assignable franchise as distributors for the sale of products manufactured or sold by the defendant corporation to all classes of trade, with the exception that the franchise for distribution did not apply to sales of defendant's products, "to manufacturers who purchase their products for use as original or accessory

equipment, manufactured for resale * * *". There were other exceptions provided, but both parties agree that none of them are applicable here.

The dealings between the parties were such that it was agreed that the plaintiffs could purchase defendant's products at a discount of 45% off the defendant's current list price for its various products. There was testimony that the defendant corporation, in arranging for the distribution in question, suggested to the plaintiffs that in reselling defendant's products, no greater discount off defendant's list price than 30% be given by plaintiff to its customers. This was not a commission contract, and the plaintiffs' compensation was limited to the profit it would make upon resale of the products purchased from defendant corporation.

The plaintiffs had, during the course of their acting as distributors for the defendant, from time to time sold defendant's products to a concern known as the R. C. Mahon Company; and, as a matter of general practice, did from time to time place orders with the defendant corporation for products for which plaintiffs already had negotiated a sale to its own customers. In some of these instances, an order sent to defendant corporation would contain instructions to ship the goods covered by the order directly to plaintiffs' customer. It appears that in some instances orders from plaintiffs to the defendant corporation directed defendant to ship the orders directly to the R. C. Mahon Company.

Commencing in August, 1949, defendant corporation began to sell some of its products directly to the R. C. Mahon Company, and the parties have stipulated that between August 31, 1949, and February 29, 1952, sales were made directly by defendant corporation to the R. C. Mahon Company of goods that had a total list price of $50,800.43 and that the actual price charged by the defendant corporation to the R. C. Mahon Company for these goods amounted to $25,777.39. It was stipulated between the parties that items sold to R. C. Mahon Company were sold at list price less 45% discount, except for items referred to as "the DeSoto job" and "Ford Motor Company job", which latter sales were made at a discount of 49% and 51%, respectively. The stipulation discloses that none of the sales made to R. C. Mahon Company were at a price in excess of the price that would have been paid by plaintiffs herein to the defendant corporation, had they, themselves, purchased the goods in question from the defendant corporation and themselves resold these goods to the R. C. Mahon Company.

It appears from the evidence that in the month of November, 1949, the plaintiffs learned that R. C. Mahon Company was about to build some spray paint booths for the DeSoto Company, which spray paint booths would require as part of the equipment thereof certain air filters which were of the general kind manufactured by defendant corporation. It is undisputed that the plaintiffs herein consulted with representatives of the R. C. Mahon Company and DeSoto Company and were at least helpful in getting the defendant corporation's air filters specified for use by the R. C. Mahon Company in building the spray paint booths in question for DeSoto. There is some uncertainty in the record as to whether or not the efforts of the plaintiffs or the efforts of the defendant's own factory representative were the effective agency which brought about the specification of defendant corporation's air filters for the DeSoto job. It may be that both combined to bring about this specification.

In the fall of 1949, becoming aware of the apparent intention of the defendant corporation to sell directly to R. C. Mahon Company, plaintiffs complained to representatives of the defendant corporation that such conduct on the part of the defendant corporation was unfair treatment of plaintiffs as distributors of defendant's products. Apparently, these complaints were the subject of much discussion and some correspondence. The defendant claims that all of its sales to

the R. C. Mahon Company were within the exceptions noted above, in that defendant claims that all sales to the R. C. Mahon Company for the DeSoto job were sales, "to manufacturers who purchase their products for use as original or accessory equipment, manufactured for re-sale * * *".

It is the claim of the plaintiffs that the sales to the R. C. Mahon Company were not within the exceptions to the contract and that they are entitled to damages in the amount of the profits they would have made had they, themselves, made all of these sales to R. C. Mahon Company at a discount of 30% off defendant corporation's list price, after having purchased the goods from defendant corporation at 45% off their list price. On this basis, they claim their damages to be equal to 15% of $50,800.43, or $7,620.06.

It is the further claim of the plaintiffs that even though the sale by the defendant corporation to R. C. Mahon Company on the DeSoto job was within the exception in the contract, nevertheless plaintiffs have rendered a service beneficial to the corporation and that the corporation, having accepted the benefit of that service, should pay to plaintiffs compensation for such service.

In relation to the DeSoto job, it is claimed by defendant that in all events there arose a dispute between the parties as to whether or not plaintiffs were entitled to any damages, commissions, or other compensation arising out of the Mahon-DeSoto job; and that this dispute was concluded in an accord and satisfaction of the parties and payment to and acceptance by plaintiffs of an agreed amount. The evidence shows that the defendant corporation issued to the plaintiffs credit memos covering various items that went to the Mahon-Desoto job, equal to 2½% of the actual selling price. There is no question but what these credit memos were offered by defendant to plaintiffs to settle this controversy. Plaintiffs, however, deny they accepted the proffered settlement, but admit they did accept and cash a check forwarded to them by defendant corporation in the amount of $327.61 which was equal to 2½% on the net billing made under the Mahon-Desoto job. Plaintiffs claim they merely accepted this as money due them on account of this transaction.

The defendant makes the following claims in defense: (1) that all sales to R. C. Mahon Company were within the exceptions to the contract, as noted above, (2) that as to the R. C. Mahon-DeSoto job, there was an accord and satisfaction, (3) that in all events, there is a total failure of proof of damages in that plaintiffs have failed to prove that they could have sold to the R. C. Mahon Company the goods in question at any price above the price these goods would have cost plaintiffs had they purchased them from the defendant corporation and resold them to R. C. Mahon Company, (4) defendant further claims that the action having been brought upon the contract, recovery cannot be had on quantum meruit, and likewise that even if such recovery could be sought, there is no proof of value of the service rendered by plaintiffs, (5) defendant further contends that notwithstanding all of the considerations above, plaintiffs have failed to offer competent evidence of damages. In this respect, they claim that even had the plaintiffs purchased the goods covered by the disputed orders from the defendant corporation and sold them to the Mahon Company at 30% off list price, that they would not be entitled to recover the gross profit between the purchase price of 45% off list, and selling price of 30% off list. They assert that in all events, plaintiffs would have had some selling costs in connection with the transaction and there has been no evidence offered of what such selling costs would have been, so that the Court has not sufficient evidence upon which to base an award of damages to the plaintiffs.

The Court makes the following Findings of Fact and Conclusions of Law:

**302**

## Findings of Fact

1) The Court is of the opinion that the sales by defendant corporation to R. C. Mahon Company for the DeSoto job were within the exceptions to the contract in that in the instance of the DeSoto job, the R. C. Mahon Company was, "a manufacturer who purchased products for use as original or accessory equipment, manufactured for resale * * *".

2) That the sale to R. C. Mahon Company, made January 15, 1952, in the net sale price amount of $10,042.93 (Ford Motor Company job) was likewise within the above quoted exception.

3) That no evidence was offered by either party as to whether or not the other sales to R. C. Mahon Company were within, or not within, the quoted exceptions.

4) That no evidence has been offered by the plaintiffs to prove that it could have sold the products that the defendant sold directly to R. C. Mahon Company at a price that would have provided plaintiffs with a profit, had they, themselves, handled all of the sales.

5) That the plaintiffs have offered no proof as to the value of any service claimed to have been rendered to defendant corporation in connection with the so-called DeSoto job and that no facts are in the record from which the Court could fix a value on such service and make any award to plaintiffs on the basis of quantum meruit, even if such award were proper.

6) That the plaintiffs accepted the check of the defendant corporation in the amount of $327.61 as in accord and satisfaction of the matters in dispute which arose out of the so-called Mahon-DeSoto job.

## Conclusions of Law

1) It is the Court's opinion that as a matter of law, as well as fact, a proper construction of the contract made by the parties results in a determination that the direct sales made by the defendant corporation to R. C. Mahon Company in connection with the DeSoto job were within the mentioned exceptions to the contract. In this connection, the Court points out that the air filters in question were used by R. C. Mahon Company in manufacturing the spray paint booths, and that the air filters in question became an integral part of the booths so manufactured. Further, it appears that the R. C. Mahon Company manufactured spray paint booths for reselling to DeSoto. It has been argued by plaintiffs' counsel that the term "resale" should be construed to mean resale to the public. The Court finds no justification for reading such meaning into the contract.

2) It is the Court's conclusion, as a matter of law, that the burden of proof was upon plaintiffs herein to prove all of the elements of their case and that includes proof that the sales made to R. C. Mahon Company were sales that plaintiffs had the exclusive right to make. The Court is of the opinion that plaintiffs did not sustain this burden.

3) The plaintiffs had the burden of establishing, by competent proof, the damages they claim to have sustained. The Court is of the opinion that even though its conclusions upon the proper construction of the contract and the plaintiffs' burden in regard to the character of the sales to the R. C. Mahon Company were erroneous, there still is a failure of proof on the part of plaintiffs as to a measure of damages. In the absence of proof, this Court has no right to assume that had defendant corporation not sold the goods in question directly to R. C. Mahon Company, that the plaintiffs would have been able to get orders therefor from R. C. Mahon Company at prices which would have permitted them to earn a profit. This Court cannot assume that the plaintiffs would have been able to sell to the R. C. Mahon Company the goods in ques-

tion at any price above what would have been plaintiffs' cost price on these same goods. It is admitted that all sales made directly to R. C. Mahon Company by the defendant corporation were at prices not greater than what would have been the cost thereof to the plaintiffs had they purchased these same goods from the defendant corporation. It is, accordingly, the Court's conclusion that plaintiffs have offered no evidence from which the Court could make an award of damages to the plaintiffs even though the defendant may have breached its contract with plaintiffs in selling directly to R. C. Mahon Company.

4) It is further the Court's conclusion that even if it indulge the claim of the plaintiffs that they would have made a gross profit on these sales to R. C. Mahon equal to 15% of defendant corporation's list price for such goods, there is no evidence in the record of the plaintiffs own costs in connection therewith, so as to properly arrive at a figure of net profit to be used as the basis for an award of damages. It is, accordingly, the Court's conclusion both as a matter of law and fact, that no recovery can be had by the plaintiffs.

5) While the proofs show that plaintiffs rendered some service that may have aided defendant in selling its product for use on the R. C. Mahon-DeSoto job, the Court finds no contract, express or implied, which obligated the defendant to compensate plaintiffs for such service. Likewise, there is no proof which would enable the Court to place a value on such service and award damages therefor.

### Order of the Court

It is the decision of this Court that the plaintiffs take nothing by their action and that a judgment of no cause of action be entered in favor of the defendant.

A judgment in accordance with this opinion shall be prepared and duly presented to the Court.

Defendant shall recover its costs, to be taxed.